IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT MORRIS,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**THENA POTEAT, MELVIN HINTON,**<br>**and SHERI BUETTNER,**<br><br>      **Defendants.** | Case No. 24-cv-2040-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Robert Morris, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on a partial motion for summary judgment filed by Thena Poteat and Sheri Buettner (Docs. 31, 32). Poteat and Buettner argue that Morris failed to exhaust his administrative remedies as to some of the claims against them prior to filing his lawsuit.[1] As of this date, Morris has not filed a response.

## BACKGROUND

On August 26, 2024, Morris filed a Complaint alleging that he was denied medications for his mental health and sexually assaulted by Dr. Thena Poteat (Doc. 1). Morris alleged that he was previously prescribed Wellbutrin for his mental illness but

---

[1] Melvin Hinton did not join in the summary judgment motion.

upon his transfer to Menard Correctional Center in August 2021, Dr. Poteat discontinued the prescription (Doc. 7, p. 2). Morris filed a grievance about his medication, and Dr. Poteat threatened to take all his clothes if he did not behave, comments that Morris perceived as sexual harassment (*Id.*).

In May 2022, Morris again saw Dr. Poteat, and she accused him of lying to his mental health group about cocaine (Doc. 7, p. 2). She again made sexually suggestive statements. Still without his Wellbutrin, Morris alleged that he suffered withdrawals and eventually passed out as a result (*Id.* at p. 3). Morris's mother called Dr. Melvin Hinton to complain about his staff's misbehavior. Sheri Buettner later conducted a wellness check on Morris at Dr. Hinton's direction (*Id.*). Morris informed Buettner that he needed his medication, but Buettner informed him that Dr. Hinton would no longer prescribe Wellbutrin to Morris (*Id.*).

Morris also alleged that he was sexually assaulted by Dr. Poteat. He pointed to a grievance dated December 22, 2022, where he complained that Dr. Poteat inappropriately touched him and then performed oral sex (Doc. 7, p. 4). He also submitted a PREA complaint about her actions.

After a review of Morris's claims pursuant to 28 U.S.C. § 1915A, Morris was allowed to proceed on the following counts:

>   Count 1:   Eighth Amendment deliberate indifference claim against Dr. Thena Poteat, Mental Health Professional Sheri Buettner, and Dr. Melvin Hinton for discontinuing and refusing to renew Morris's prescription for Wellbutrin.

      Count 2:      Eighth Amendment cruel and unusual punishment claim against Dr. Thena Poteat for allegedly threatening to assault Morris and sexually assaulting him on December 22, 2022.

(Doc. 7, p. 6).

### A. Motion for Summary Judgment

Defendants Dr. Poteat and Buettner seek a partial summary judgment against Morris. They argue that Morris failed to exhaust his claim against Buettner regarding his access to Wellbutrin (Count 1) and his cruel and unusual punishment claim against Dr. Poteat (Count 2). Defendants argue that none of Morris's grievances mention these claims as it relates to these specific defendants.

*1. Count 1*

As to the claim against Buettner in Count 1, there are several grievances in the record mentioning the discontinuation of his medication.

> **June 15, 2022 Grievance (#172-6-22MEN):** Morris's June 2022 grievance alleged that his Wellbutrin was discontinued despite Morris contending that he was not hoarding or selling it (Doc. 32-1, p. 137). Morris alleged that Nurse Morgan told him that Dr. Poteat discontinued the medication "ironically" for no reason (*Id.* at p. 138). He could not wean off the medication slowly and suffered withdrawals (*Id.*). He spoke to mental health official Ms. Hoe and she indicated she would look into the status of his medication (*Id.*). Morris requested that his complaint be conveyed to Dr. Hinton, Dr. McCormick, and Dr. Perya (*Id.* at p. 137).
> The grievance was marked as an emergency and the Chief Administrative Officer ("CAO") directed that it be expedited as an emergency (Doc. 32-1, p. 137). The grievance was forwarded to the healthcare unit and mental health staff for review. The pharmacy advised the grievance officer that Dr. Poteat discontinued Morris's Wellbutrin on May 18, 2022. On June 22, 2022, Carri Morris indicated that a BHT was sent to complete a wellness check on Morris and he was not suicidal or homicidal (*Id.* at p. 136). He was also seen by a psychiatrist on June 16, 2022. Although the psychiatrist tried to discuss treatment options, Morris was insistent that he be prescribed Wellbutrin (*Id.*). The psychiatrist noted that the medication was a non-

formulary and not usually prescribed by Wexford (*Id.*). The grievance officer denied the grievance as moot (*Id.*).

On July 14, 2022, Morris appealed the grievance to the Administrative Review Board ("ARB") (Doc. 32-1, p. 136). On July 26, 2022, the ARB denied the grievance because it was appropriately handled by the prison. The ARB noted that medical treatment was at the discretion of the medical professionals (*Id.*).

**June 19, 2022 Grievance (#241-6-22MEN):** Morris submitted a second grievance about his lack of Wellbutrin, noting that on either June 15 or 16, he met with a tele-doctor to discuss the discontinuation of his Wellbutrin (Doc. 32-1, p. 141). He learned that in April 2022 certain staff had requested that he stop Wellbutrin and on May 17 he met with Dr. Poteat, but his medications were not discussed at the visit (*Id.*). He received Wellbutrin for 3-4 days after the appointment and then his medication was stopped (*Id.* at p. 142). He alleged that Dr. Poteat and the medical director acted improperly by failing to inform him of their decision and by failing to wean him off of the medication (*Id.*). He learned from another tele-doctor that a group leader informed Dr. Poteat that Morris had allegedly indicated in group therapy that his Wellbutrin made him feel like he was taking cocaine (*Id.*). Morris contends this was a lie. Morris asked for his Wellbutrin to be restarted and for an appointment with Dr. McCormick, Dr. Perya, or Dr. Hinton (*Id.* at p. 141).

Morris marked this grievance as an emergency, and the CAO marked the grievance to be expedited as an emergency (Doc. 32-1, p. 141). The grievance officer noted that the issues raised in the grievance were already addressed in Morris's prior grievance (*Id.* at p. 140). On June 28, 2022, the CAO concurred with the finding (*Id.*).

On July 14, 2022, Morris appealed the grievance to the ARB (Doc. 32-1, p. 140). The ARB returned the grievance as duplicative of his June 15, 2022 grievance (*Id.* at p. 139).

Morris filed other grievances mentioning his lack of Wellbutrin. In a grievance dated November 30, 2022, he discussed past sexual misconduct offenses at Menard and his relationships with various female staff (Doc. 32-1, pp. 46-47). He noted he needed his Wellbutrin back, but there is no indication that he grieved the loss of his Wellbutrin. Nor did he identify Buettner in the grievance. In a grievance dated February 27, 2023, Morris complained that he was improperly restricted from accessing the yard. At the bottom of

the grievance, Morris indicated that he informed a mental health provider during a telepsych appointment about his inability to access the yard. He also noted that he informed the doctor that his Wellbutrin was improperly discontinued (*Id*. at p. 70). Morris did not identify any providers who made the decision to discontinue the mediation, nor does it appear that any grievance official addressed the Wellbutrin issue (*Id*. at pp. 67, 71).

Sherri Buettner also submitted an affidavit indicating that she is a Qualified Mental Health Professional and cannot prescribe or discontinue medication, nor is she licensed to make decisions regarding medications (Doc. 32-5).

2. *Count 2*

Dr. Poteat points to two grievances relevant to the claim against her in Count 2.

> **December 22, 2022 Grievance**: On January 3, 2023, the ARB received a grievance from Morris dated December 22, 2022 (Doc. 32-1, p. 113). The grievance was marked as an emergency and there was a handwritten note at the top stating: "PREA HELP!!! !Emergency!" (*Id*.). Morris also marked the nature of the grievance as staff misconduct, transfer denial, medical treatment denial, and staff violating PREA protocols (*Id*.).
> Morris's grievance further noted that on December 22, 2022, he was escorted to his cell and agitated by Dr. Poteat and several guards. At the end of his appointment with Dr. Poteat, she unstrapped his jumpsuit, whipped out his penis, and performed oral sex (Doc. 32-1, p. 113). When Morris told her to stop, Dr. Poteat allegedly noted that his grievance requested to be diagnosed with hyperactive sexual desire disorder, and her actions were part of her evaluation (*Id*. at pp. 113-114). Although Morris tried to scream for help, she smacked him in the face and continued to assault him for several minutes (*Id*. at p. 114).
> Morris alleged that he immediately asked for a PREA kit and grievances, but the officers denied his requests because the nurses were gone for the day and they were out of grievances (Doc. 32-1, p. 114).

Morris attached a letter to the grievance indicating that he was denied the opportunity to put his grievances in the grievance box at the prison and asking the director to review his claims (*Id*. at p. 115). On January 12, 2023, the ARB returned the grievance because Morris failed to properly submit his grievance to prison grievance officials before appealing his grievance to the ARB. The ARB acknowledged that the grievance included PREA allegations and noted that the warden and internal affairs would be informed of Morris's allegations (Doc. 32-1, p. 112).

**February 24, 2023 Grievance (#360-2-23MEN)**: On February 24, 2023, Morris submitted an emergency grievance to the warden (Doc. 32-3, p. 53). Morris indicated that the nature of the grievance was broken confidentiality and PREA confidentiality (*Id*.).

Morris complained that in January 2023, he spoke with mental health professional Ms. Wilkes about his December 2022 PREA complaint against Dr. Poteat (Doc. 32-3, p. 53). Other staff were either standing around and heard the conversation or Wilkes informed them, because Morris alleged that staff in his unit knew about his privately filed PREA complaint (*Id*.). Morris further complained that Nurse Brandy Hagane later conducted a medical evaluation, and she must have also told cellhouse staff about his complaint (*Id*. at pp. 53-54). Morris noted that no rape kit was provided during the evaluation (*Id*. at p. 53). Morris noted that either Hagane, Intel Officers, or Dr. Poteat told staff, because on January 27 a tele-psych doctor indicated that none of the doctors at Menard would provide him with his desired drug, Wellbutrin, despite the fact the medication helped him cope with his issues (*Id*. at p. 54). Morris alleged that an officer later came up to him asking if the rumors about Morris and Dr. Poteat were true and indicated that all the officers know about the PREA complaint (*Id*.). Morris further indicated that after his tele-pysch appointment another officer asked why Morris would file something on Dr. Poteat (*Id*.).

In his request for relief, Morris requested a transfer to another prison, a renewal of his Wellbutrin medication, and to not see Dr. Poteat again for treatment (*Id*. at p. 53).

On February 28, 2023, the CAO marked the grievance as an emergency (Doc. 32-3, p. 53). The grievance office sent the grievance to Mental Health Services Director Kimberly Weitl (*Id*. at p. 55). On March 20, 2023, she responded that Morris was not eligible for a transfer based on his mental health (*Id*.). She also noted that Morris failed to indicate his specific issue with Dr. Poteat and would not change his assignment to her because Dr. Poteat met with all

> individuals assigned to Morris's cellhouse (*Id.*). Weitl also noted that the issues with his requested medication had already been conveyed to him (*Id.*). The grievance officer noted that although the grievance was marked as a HIPAA violation, the HIPAA Coordinator was unable to substantiate the issue as a violation of HIPAA (*Id.* at p. 51). The grievance officer found that Weitl's response was proper, and the issues were appropriately addressed (*Id.*). The grievance was deemed moot (*Id.*).
> The grievance was not marked for an appeal to the ARB (Doc. 32-3, p. 51). Nor is there any indication that the ARB received an appeal of this grievance (Doc. 32-1, pp. 10-11).

Morris filed another grievance on December 24, 2022, but the grievance complained about his ability to have video visits with his child and child's mother (Doc. 32-1, pp. 57-60). The grievance also requested to be seen by mental health for the resulting depression he was experiencing from not being able to see his loved ones (*Id.* at p. 60). Morris noted that he believed mental health staff were purposefully not seeing him (*Id.*).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.[2] Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given

---

[2] Recently the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id.* at 479. Here, the issue of exhaustion is not intertwined with the merits of Jenkins's underlying claims. Thus, *Perttu* is not applicable.

another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Morris was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the written grievance,

when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite

processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## DISCUSSION

Along with filing their motion for summary judgment, Defendants certified that they sent a copy of their motion to Morris (Doc. 33). Prior to the response deadline, Morris filed a motion requesting additional time to file a response (Doc. 34). The Court granted Morris's request for more time and subsequently granted him two later extensions (Docs. 36-38, 40). Morris's third motion for extension of time, dated October 9, 2025, and received on October 14, 2025, indicated that he needed additional time because he lacked access to ink pens, tablets, and envelopes to properly litigate his five pending cases (Doc. 38, p. 1). Although Morris indicated he lacked writing materials or an ability to correspond with the Court, his request was hand-written and mailed to the Court, presumably by Morris. He believed that officials at Menard were retaliating against him. The Court granted him another extension, resetting the summary judgment response deadline to November 17, 2025 (Doc. 40). As of this date, Morris has neither filed a response nor requested additional time to do so.

Because Morris failed to respond to Defendants' statement of facts, the Court accepts the statement of facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). *See also* SDIL Local Rule 56.1(g) ("All material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The admission of the material facts, however, does not automatically grant Defendants summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

### A. Count 1 against Sheri Buettner

As to Morris's claim in Count 1 alleging that Sheri Buettner improperly discontinued his Wellbutrin, Morris failed to exhaust his administrative remedies. None of his grievances related to the discontinuation of his medication mention Buettner by name or description. He mentions other medical officials, including Dr. Poteat and Nurse Morgan, but nothing that would suggest that he was complaining about Buettner's actions. Although the grievance process is not designed to provide notice to anyone who might later be sued, it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. There is nothing in any of Morris's grievances regarding Wellbutrin that would put prison officials on notice that Buettner was involved in the

decisions regarding his prescription. Buettner testified in her affidavit that she is not involved in that process as she is not licensed to make prescribing decisions. Thus, his complaints about the medical providers who discontinued his medication would not have put the prison on notice that he was complaining about actions of Buettner. Because Morris neither named nor described Buettner in his grievances, he failed to exhaust his claims against her.

### B. Count 2 against Dr. Poteat

Morris also failed to exhaust his administrative remedies against Dr. Poteat regarding the alleged assault. Morris submitted only one grievance regarding Dr. Poteat's alleged assault. Morris's December 2022 grievance does focus on the alleged assault, but Morris submitted the grievance directly to the ARB (Doc. 32-1, p. 113). The ARB returned the grievance because it lacked a response from the grievance officer and chief administrative officer (*Id*. at p. 112). Some grievances may be sent directly to the ARB, including those grievances regarding protective custody, the involuntary administration of psychotropic drugs, disciplinary proceedings occurring at a facility other than the one in which the inmate is currently housed, and other issues pertaining to a facility other than the one that the inmate is currently housed. 20 Ill. Admin. Code §504.870. A grievance regarding PREA protocols is not one of the topics that can be submitted directly to the ARB. Illinois's PREA provisions do modify the grievance process, eliminating the deadline for submitting a grievance as well as the informal resolution portion of the grievance process. *See* 28 C.F.R. 115.52(b)(1)-(3); 20 Ill. Admin. Code §504.810(a) ("Grievances related to allegations of sexual abuse shall not be subject to any

filing time limit."). An inmate must, otherwise, follow IDOC's grievance process. *See Harris v. Henderson*, Case No. 3:19-CV-00660-MAB, 2021 WL 690004, at *7 (S.D. Ill. Feb. 23, 2021); *Parry v. Muller*, Case No. 18-CV-1394-JPG, 2018 WL 4027572, at *3 (S.D. Ill. Aug. 23, 2018).

Here, Morris failed to follow the grievance process when he submitted it to the ARB. The ARB rightfully rejected the grievance and directed Morris to submit it in accordance with Section 504.810(a). Because the grievance was rejected on procedural grounds, it remained unexhausted. *Dole*, 438 F.3d at 809. Further, there is no evidence in the record to suggest that Morris attempted to pursue the grievance through the normal grievance process. Thus, Morris failed to exhaust his December 22 grievance against Dr. Poteat.

Morris's February 2023 grievance mentions his PREA complaint against Dr. Poteat but only in grieving a confidentiality issue (Doc. 32-3, p. 53). Morris argued that his confidentiality was broken by Ms. Wilkes when she spoke to Morris about the December incident. He does not grieve the incident or describe the assault in any fashion. He vaguely refers to access to a rape kit and states that he does not want to be treated by Dr. Poteat (*Id.*). But the grievance focused on the confidentiality issues, and he noted three times under the "nature of grievance" section that his PREA confidentiality was broken (*Id.*). The grievance officer only addressed the confidentiality issue, noting the HIPAA Coordinator could not substantiate a violation (*Id.* at p. 52). The grievance was further reviewed by Dr. Kimberly Weitl who noted that she could not grant his request to "never be seen by Dr. Poteat again" because Dr. Poteat was assigned to his cellhouse and

Morris's grievance failed to identify a "specific issue" with Dr. Poteat (*Id.*). The grievance did not exhaust the claims against Dr. Poteat because it failed to provide the grievance officials with enough information to inform them of the sexual assault. Even if Morris's grievance did provide officials with notice of his claims, it does not appear from the record that Morris fully exhausted the grievance or any grievance regarding his sexual assault claim in Count 2. Thus, he failed to exhaust his administrative remedies against Dr. Poteat in Count 2.

## Conclusion

For the reasons stated above, Defendants' partial motion for summary judgment (Docs. 31, 32) is **GRANTED**. Count 1 is **DISMISSED without prejudice** as to Sheri Buettner. Count 2 against Dr. Poteat is **DISMISSED without prejudice**. Count 1 shall proceed against Dr. Poteat and Dr. Melvin Hinton.

**IT IS SO ORDERED.**

DATED: February 2, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**